| | |
|---|---:|
| 6,716.7 yards sold and delivered before termination of contract.................... | $ 6,646 14 |
| 6,300 yards sold to National Contracting Company ................................... | 6,930 00 |
| 3,066 yards sold, after the termination of the contract, to parties whose names are not given ................................ | 3,832 52 |
| Total .................................... | $17,408 66 |

### Credits.

| | | |
|---|---:|---:|
| Payments as per Exhibits P 23 to 26 (Rec. pp. 64 to 69)............ | $1,756 04 | |
| Amount paid plaintiff by National Contracting Company ........... | 5,639 00 | |
| Items 2 to 10, inclusive, and item 13 of statement annexed to answer ......................... | 173 98 | |
| Commissions on sale to National Contracting Company .......... | 531 70 | |
| | | 8,100 72 |
| Bal. due by defendant.................. | | $ 9,307 94 |

The judgment of the lower court was for $8,908.54. Plaintiffs filed an answer in this court asking that it be increased to $9,838.64. We find that it should be increased as above.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be increased to $9,307.94, and that, as thus amended, it be affirmed. Defendant to pay all costs.

---

(36 South. 342.)

No. 15,012.

PRINCE et al. v. POLICE JURY OF CONCORDIA PARISH et al.

(March 28, 1904.)

FERRY FRANCHISE—ILLEGAL GRANT—ESTOPPEL —RATIFICATION.

1. The act complained of and the contract attacked were illegal.

2. Plaintiffs did not timely object on the ground of illegality; on the contrary, they had, previous to the adjudication, for five years held the right under proceedings similar to those they attack in the pending litigation.

3. Plaintiffs were bidders for the franchise. After its adjudication they withdrew their ferryboat, and apparently accepted the change for at least 50 days.

112 LA.—9

4. The contract has been in part executed. It was not null to a degree that estoppel does not lie. The police jury had the right to offer the ferry privilege and to have it adjudicated at public auction.

5. Irregularities or illegalities in the manner of exercising the right which that body had the power to confer may be ratified, or may be cured by estoppel.

(Syllabus by the Court.)

Appeal from Tenth Judicial District Court, Parish of Concordia; John L. Dagg, Judge.

Action by George Prince and others against the police jury of Concordia parish and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

John S. Boatner, for appellants. John Dale and Samuel Lucius Elam, for appellees.

BREAUX, J. A direct action was brought for the possession of the ferry at Vidalia and the revenue earned by this ferry on the Concordia side of the river. This is a sequel to the mandamus proceeding lately decided on appeal in this court, entitled "State ex rel. George and Margaret Prince v. Police Jury et al.," 108 La. 311, 32 South. 363. To the end of obtaining possession of the ferry plaintiffs ask to have decreed null a contract of lease of the Vidalia ferry franchise, which was entered into between S. B. McNeely and the police jury, of the parish of Concordia for five years from March 11, 1901, and, further, that a judgment be rendered decreeing plaintiff entitled to the contract and to revenues thereunder worth over $2,000 per annum.

The defendants severed in their defense. Both pleaded a general denial; each averred that the contract attacked is legal, and that the lessee, McNeely, has fully complied with all the obligations resting upon him; that plaintiff is estopped. The parish specially pleads that specific performance cannot be required, and the defendant McNeely that he is the legal owner of the contract of lease acquired by him in good faith.

Plaintiffs urge that they were the highest

bidders, and thereby are entitled to the contract.

They set forth that the ferry franchise, in accordance with an ordinance of the police jury, was advertised over 30 days, and thereby notice was given that it would let the public ferry in question at public auction at the time stated, the successful bidder to furnish bond in the sum of $1,000, to be renewed annually. The police jury in this advertisement reserved the right to reject any bid.

The complaint of plaintiff, and the ground on which he claims the contract, are that the reservation to reject "any and all bids" was an illegal exercise of power by the police jury and a violation of the statutes under which it was acting, which directed how to dispose of the franchise, but avoided granting the right to reject any and all bids.

Plaintiffs further urge that after the bids had been closed, and after the president of the police jury had announced that they were the highest bidders, through a committee appointed by the police jury, the police jury illegally rejected their bid and accepted a bid from S. B. McNeely, the lowest bidder, and thereafter the police jury entered into a contract with him, which plaintiffs in this action attack.

The estoppel upon which defendants mainly base their defense rests upon the facts that plaintiffs were present and bid at the sale under the advertisement, and that they were also aware of all the conditions upon which the ferry was let, as these conditions were read before the bids were invited; that plaintiffs bid at the sale without objection or protest, and thereby estopped themselves.

Another ground of estoppel the defense puts up is that plaintiffs gave up and abandoned the ferry to Mr. McNeely, and that he (McNeely), in consequence of this abandonment, secured a ferryboat, and engaged in the business of ferrying from Vidalia to Natchez, as required by his contract.

With reference to the committee of whose action in the premises plaintiffs complain, defendants admit that a committee was appointed by the police jury to confer with a committee appointed by the Natchez authorities to decide which bid to accept; that the joint committee had met, and recommended the McNeely bid, which recommendation met with the approval of the police jury, and the adoption of the committee report by that body; that plaintiff was cognizant of all these facts.

With reference to the bid which plaintiff claims as having been actually awarded to him, it seems that through an accident the clerk of the police jury, by an oversight, called out the name of plaintiff George Prince, although it was his intention at the time to do quite the contrary. Some time afterward he was informed of his error. The contention on the part of the defendants is that this plaintiff was well aware that it was not the intention to award the bid to him, as he had prior to the offering been informed of the fact, which rendered it impossible to adjudicate the contract to him without disregarding the agreement entered into with the authorities of Natchez.

Before taking up the questions involved for decision, there is another fact we desire to note.

Up to the date of the adjudication of the ferry, before mentioned, plaintiffs were the lessees of the police jury, and had been for five years, under a contract very similar, which had been adjudicated under the same conditions, both as relates to the bid and as relates to agreement with the authorities of Natchez. To copy from the proceedings of the police jury dated January 14, 1896: "That all bids be made under and in conformity with the specifications and requirements on file in this city clerk's office in the city of Natchez and in the parish clerk's office in the town of Vidalia; the right being reserved to reject any and all bids."

Ruling—It is true, as before stated, that

Prince was sotto voce declared the highest bidder, as stated by him, but it is manifest that it was done through the merest error. The intention of the auctioneer was to adjudicate the contract to another than plaintiff. There was not the least intention, as we gather from the testimony, to adjudicate the contract to plaintiff. No one thought of doing such a thing. The mere calling of a name in a moment of mental abstraction can have no significance.

We infer that plaintiff himself was aware of the lapsus linguæ at the time, for he just then laid no claim to the bid. The consent of both parties is necessary to make a contract binding. The officers of a corporation, or those representing it, can do no act or make any contract binding in direct opposition to its will, and this by the merest slip of the tongue.

Plaintiffs' attack is mainly directed against the contract entered into between the police jury and the plaintiffs granting the franchise to operate a ferry on the ground that the police jury had no right to insert in the ordinance and in the advertisement the clause reserving to itself the right "to reject any or all bids." Although the statute sanctions no such reservation in the country parishes, it is different in the city 'of New Orleans and Shreveport.

We are not inclined to take up and discuss at great length the advisability and impropriety of disregarding any of the clauses of a law, whether mandatory or directory.

They all should be obeyed.

It remains that in executing delegated powers parties sometimes place themselves in such a position that they cannot be heard to urge the nullity growing out of the failure to track the delegated power.

It must be said that there are acts of willful disregard of law reprobated to an extent that acquiescence or estoppel can be of no effect. They must be declared void.

The case before us for decision does not fall within the class of cases of acts so void that the most manifest estoppel can have no effect.

The case here does not fall within the class of cases to which we have in general terms just referred, for the following reasons: The legislative power to do the act had been granted. The parish had the power to let the franchise at public auction. It is not, therefore, a case where a legislative power to do an act had not been granted.

The irregularity which arose in executing the power did not have the effect of completely destroying and wiping out all that has been done, and that beyond the possibility of all ratification and the effect of every estoppel.

An illegal incident, as in this case, may arise in executing a power without rendering the whole attempt at execution ultra vires. The incidental act (that is, the reservation to withdraw the property) attacked as ultra vires has become part of an executed contract. The testimony discloses that at the inception of the work of one of the defendants under the contract, and for about 50 days thereafter, it was executed without the least objection from plaintiffs. They yielded the place without protest. One ferryman stepped out and another stepped into his place. Plaintiffs' ferryboat was withdrawn, and the ferryboat of the defendant McNeely was brought in its place.

It is manifest that the contract has been executed by the latter to date.

The well-considered decisions of the courts have always held that:

"Ultra vires as a defense interposed against a contract wholly or in part executed has very generally been looked upon with disfavor." Green's Brice, Ultra Vires, p. 729, note.

The parties were in pari delicto. The unsuccessful bidder has no right of action to set aside a contract of lease which he had owned under precisely the same state of facts for

five years, and to the adjudication of which, as before mentioned, he did not timely object, but, on the contrary, he, by his conduct, really gave it sanction.

All parties, plaintiffs and defendants, were in good faith, and the contract has every appearance of a bona fide contract. The defendant would not stand in good grace before the courts after the contract has been executed in good faith for months if it were to seek to set aside the contract on the ground that it is ultra vires. If defendants are thus bound, the plaintiffs cannot successfully urge that it is ultra vires. All parties are equally involved in this transaction.

We leave the subject of ultra vires proper to take up the subject of nullity of the contract.

The record does not reveal that any fraud was committed; the case is without that feature which is always a potent factor toward vitiating everything, and we pass to the question whether the law was prohibitory. It is not in terms prohibitory. It is not in its effect prohibitory, and against public policy to such a degree or extent that any one without a standing in court can plead its nullity.

To begin with, the plaintiffs are before us as unsuccessful bidders, and as parties who have failed to succeed themselves, and who would not have complained had they succeeded in securing the contract under the ordinance of which they now complain.

Plaintiffs have not acquired any right to stand in judgment.

If defendants' contract is null and void, as they contend, it would be equally null and void in so far as they are concerned. They cannot be the beneficiaries of the illegality charged, if illegality it be. The whole proceeding would be vitiated by this illegality. The whole plan in matter of this adjudication is inseparable from and is permeated with the idea that the bidder was expected, in order to become the adjudicatee,

to secure a similar right from the authorities of Natchez.

The whole purpose was to avoid the possibility of having one ferry running from the Concordia side and another from the Natchez side, and thereby inconvenience the public. This is the underlying cause of the whole trouble. We imagine that, had that not been the purpose, there would not have been any such clause inserted in the ordinance as the clause of which plaintiffs complain.

The action of the police jury throughout in matter of the adjudication of this ferry is so merged into the clause to which plaintiffs object that we do not see our way clear, as interpreters of the law, to amend the ordinance by striking therefrom the objectionable features. One is inseparably connected with the other; one carries the other along; and therefore the question is not presented here of striking an illegal clause and leaving in force the legal portion of a law.

In addition, in support of our conclusion, the argument, although the questions have been thoroughly argued, does not sustain the view that the law applies to ferries on rivers between two states. The first section of the statute invoked (Rev. Laws La. § 1501) confers the power on police juries to let the exclusive privilege of establishing ferries and toll bridges within their respective limits and of leasing ferries within their respective parishes.

Nothing is said about ferries landing in an adjacent state. The question in that case would be one growing out of the want of authority. A contract may have both defects—ultra vires and illegality—and yet not be so utterly void as plaintiffs contend. For instance, a contract by a corporation without express power to build a church or college may be ultra vires, and yet not illegal. If all the stockholders were to assent, it would be technically ultra vires, none the less, without, however, committing a wrong

or prejudicing interests either private or public. The stockholders would be bound for the same reason in the main that we consider the plaintiffs estopped.

Those who have acted as plaintiffs have, as before stated, cannot avail themselves of the objection that the contract let out by the corporation and partly executed by the adjudicatee was ultra vires, or not within its delegated powers.

The judgment appealed from is affirmed.

MONROE and PROVOSTY, JJ., concur in the decree.